IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID FRANKLIN COTNEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:03-CV-1181-F |
| | ) | WO |
| BILL FRANKLIN, individually and in his | ) | |
| official capacity as Sheriff of Elmore Co., | ) | |
| Alabama, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On December 1, 2003, David Franklin Cotney, Jr. ("Cotney") filed suit against Bill Franklin individually and as sheriff of Elmore County ("Franklin"), Gary Bowers individually and as administrator of the Elmore County Jail ("Bowers"), and Elmore County, Alabama ("Elmore County").  Cotney alleges constitutional violations arising during his incarceration in the Elmore County Jail.  This cause is presently before the Court on the Motion to Dismiss (Doc. #10) filed by Bill Franklin and Gary Bowers on January 20, 2004. The Court has reviewed the submissions of the parties relating to the Motion to Dismiss and finds that the motion is due to be GRANTED IN PART and DENIED IN PART.

### I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343(4).  The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations of each.

## II.  FACTS AND PROCEDURAL HISTORY

Cotney was held in the Elmore County Jail as a federal pre-trial detainee beginning on April 18, 2003.  The Elmore County Jail is under the general supervision of Franklin, who, as Sheriff, supervises personnel and establishes policies and procedures.  The jail is under the direct supervision of Bowers as jail administrator.

Around 9:00 p.m. on April 18, 2003, Cotney accidentally activated the sprinkler system in his cell.  At Bowers's order, he was moved from cell block D to punitive detention in "X cell."  He was not given a hearing or opportunity to object to this punishment at any time during his incarceration.  The "X cell" contained no furnishings of any sort, and the cell's plumbing consisted of a "Chinese toilet," a hole in the floor covered by a metal grate. Cotney's legs were shackled together and to the grate; his hands were cuffed behind him. Bowers kicked Cotney twice, once in the leg and once in the ribs, even though Cotney was fully compliant at all times.

Cotney remained restrained for approximately fifteen hours, until noon on April 19, 2003.  The cell was cold, and Cotney was wet from the sprinkler incident.  He was not provided with any personal supplies, such as bedding or a toothbrush, and was not fed breakfast on April 19.  At noon on April 19, Cotney's right hand was removed from the handcuffs and his left hand was handcuffed to his leg shackles.  Although he did receive lunch, he was forced to eat it one-handed while shackled to the Chinese toilet.  He continued to be restrained in this way until April 21, 2003.

2

On April 21, Cotney was permitted to shower and was given fresh clothes.  He was returned to "X cell," and his feet were again shackled to the grate although his hands remained free.  On April 22,  he was given a blanket; on April 23, his feet were unshackled; and on May 1, he was given a mat.  On May 3, he was moved from "X cell" to a similar "Y cell."  During his seventeen days in "X" and "Y" cells, he was denied exercise, telephone, and visitation privileges, except regarding visits with his attorney.

On May 5, Cotney was returned to an ordinary cell and given basic personal hygiene items.  He was permitted to brush his teeth for the first time since April 18.  He was allowed thirty minutes every third day for exercise, showering, telephone use, and cell cleaning.

As a result of his time in "X cell," probably as a result of sleeping on the unsanitary floor in such close vicinity to the Chinese toilet, Cotney developed a serious staph infection.  Symptoms included lesions on his face and arms. The staph infection will be an ongoing health concern.

Plaintiff filed at least eleven administrative grievances regarding the above facts, but each was denied by Bowers.   Additionally, Cotney's experience caused his father to investigate the conditions of the Elmore County Jail.  When Bowers discovered that Cotney's father had been seeking information about jail conditions, he forbade Cotney's father from visiting Cotney "due to his subversive actions."

Cotney states that Bowers violated his constitutional rights by the use of excessive force and excessive restraint, the denial of a hearing, the condition of the cells including lack

of plumbing and bedding, and the denial of exercise, dry clothes, telephone use, visitation and basic personal hygiene.  (*See* Am. Compl. ¶¶ 68-93.)  Cotney states that Franklin developed and promulgated policies and procedures that caused Cotney to be deprived of constitutional rights.  (*See id.* at ¶¶ 94-103.)  In his prayer for relief, Cotney requests a declaratory judgment that the practices and policies complained of are unlawful, an injunction preventing further punishment, and compensatory and punitive damages and costs.  (*See id.* at ¶ (a) - (f).)

In the Motion to Dismiss, Bowers and Franklin argue that claims for punitive damages are not appropriate, that claims for injunctive relief are moot, that claims against them in their official capacities are barred, that they have qualified immunity against claims against them in their individual capacities, and that Franklin cannot be held liable on a *respondeat superior* theory.  In their Reply Brief, they add arguments that the Eighth Amendment does not apply to pretrial detainees and the Fourth Amendment does not apply to persons already in custody and under confinement.

### III.  MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.[1]  A court may

---

[1]Rule 12(b)(6) states that
> If . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

In this case, the Court permitted the plaintiff to file an Additional Supplemental Response

dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986) (citation omitted) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). The Court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *See Hishon,* 467 U.S. at 73. Moreover, the Court is aware that the threshold that a complaint must meet to survive a motion to dismiss is generally "exceedingly low." *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985) (citation omitted).

However, a heightened pleading standard is employed in this Circuit for section 1983 actions against government officials in their individual capacities when qualified immunity can be raised as a defense. *See generally Swann v. S. Health Partners, Inc.*, 2004 WL 2364793, *4 (11th Cir. 2004); *see also Fullman v. Graddick,* 739 F.2 553, 556-57 (11th Cir. 1984) ("[M]ore than mere conclusory notice pleading is required . . . [and a] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."). Additionally, "unsupported conclusions of law or of mixed fact and law have long been

---

to the Motion to Dismiss, consisting of two affidavits. Because the Court feels that the Motion to Dismiss can best be decided at this stage of the litigation without converting it to a Motion for Summary Judgment and having to allow parties to present all relevant evidence as required in Rule 12(b), the Court has not considered the affidavits in ruling on the Motion to Dismiss.

recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996

(11th Cir. 2003) (citations omitted) (holding that plaintiff did not allege sufficient facts to

find a causal connection between supervisory actions and alleged constitutional violations).

## IV. DISCUSSION

### A.  Punitive Damages

Defendants argue that punitive damages are barred by the Eleventh Amendment

because they are executive officers of the state of Alabama, thus making any award of

punitive damages, in effect, one against the state.  (Mot. to Dismiss, 7; Def. Reply, 7. )

Defendants are correct that in § 1983 actions, punitive damages are not available against

individuals acting in their official capacities.  *See Newport v. Fact Concerts, Inc.*, 453 U.S.

247 (1981) (punitive damages not available against a municipality); *Colvin v. McDougall*,

62 F.3d 1316, 1319 (11th Cir. 1995) (the *Newport* rule against punitive damages applies to

sheriffs' departments just as it applies to municipalities).

However, it is equally clear that officials sued in their individual capacity may be sued

for punitive damages.  *See Smith v. Wade*, 461 U.S. 30, 35-36 (1983); *Kentucky v. Graham*,

473 U.S. 159, 167 n.13 (1985); *Medeiros v. Randolph County Hosp. Ass'n*, 968 F. Supp.

1469, 1473 (M.D. Ala. 1997) (recognizing that "punitive damages are proper in § 1983

actions against individual defendants").[2]  Therefore, Defendants' Motion to Dismiss claims

---

[2]A clear statement of this law can also be found in a previous Middle District case
against these same two defendants only five year ago.  *See Adams v. Franklin*, 111 F. Supp.
2d 1255, 1362 (M.D. Ala. 2000) ("In § 1983 actions, punitive damages are only available

for punitive damages is due to be GRANTED as to the Defendants in their official capacities and DENIED as to the Defendants in their individual capacities.

## B. Injunctive Relief

Defendants also argue that because Cotney is no longer incarcerated in the Elmore County Jail that his claims for injunctive relief are moot. (*See* Mot. to Dismiss, 7.) In his Amended Complaint, Plaintiff asked this Court to "[e]njoin the defendants from imposing further punishment as against plaintiff and further violating his federally protected rights." (*See* Am. Compl. at ¶ (b).) Because Plaintiff is no longer under the Defendants' control and could not reasonably be expected to be under their control again, such injunctive relief is moot. *See Spears v. Thigpin*, 846 F.2d 1327, 1328 (11th Cir. 1988) (holding that when an inmate complaining of prison conditions transferred to a different facility, his claim for injunctive relief became moot and should have been dismissed).

To demonstrate mootness, the Defendants must show that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n. 10 (1982). "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Cotterall v. Paul*, 755 F.2d 777, 780 (1985). In *Cotterall*, the court held that injunctive relief for a prisoner who had been temporarily incarcerated in state

from government officials when sued in their individual capacities.") (citations omitted.).

jail was moot because his transfer made the threat of repeated injury "too speculative" to constitute a case or controversy. *Id.* Similarly, in this case, there is no real or immediate threat that Cotney will again be under the supervision of the defendants in the Elmore County Jail. Therefore, Defendants' Motion to Dismiss claims for injunctive relief is due to be GRANTED.

## C. Official Capacity Claims

Defendants also argue that claims against them in their official capacities are barred by the Eleventh Amendment. (*See* Mot. to Dismiss, 2.) The Eleventh Amendment prevents state officials from being sued in their official capacities for monetary damages. *See Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989) (citing *Quern v. Jordan*, 440 U.S. 332, 338 (1979)). Suits against state officials in their official capacities are simply recharacterizations of suits against the entity the officials represent. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Therefore, suits for monetary damages are barred to prevent damages awards from being paid out of state funds. *See Alabama v. Pugh*, 438 U.S. 781 (1978).

The only exceptions to the Eleventh Amendment bar occur if the state has waived its Eleventh Amendment immunity or Congress has abrogated that immunity. *See Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)); *Seminole Tribe v. Florida*, 517 U.S. 44 (1996). Neither waiver nor abrogation has occurred. *See Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (Alabama has not waived its Eleventh Amendment immunity);

*Quern*, 440 U.S. at 341 (Congress did not override the states' immunity by enacting section 1983).

Sheriffs and their deputies are state and not county officials.  *See* Ala. Const. Art. V, § 112; *see also Dean v. Barber*, 951 F.2d 1210, 1215 n.5 (11th Cir. 1992) ("[S]heriffs are employees of the State of Alabama. . . . [S]uit against the sheriffs in their official capacity, therefore, is prohibited by the Eleventh Amendment because the State of Alabama is the real party in interest.").  Similarly, "Alabama jailers are state officials entitled to Eleventh Amendment immunity when sued in their official capacities." *Lancaster*, 116 F.3d at 1429. Therefore, Defendants' Motion to Dismiss claims against Franklin and Bowers in their official capacities is due to be GRANTED as to claims for monetary relief and DENIED as to claims for declaratory relief.

**D.  Claims Against Franklin**

Plaintiff alleges that Franklin deprived him of his rights through the policies and procedures Franklin promulgated, that Franklin knew how he was being treated, and that Franklin was deliberately indifferent to Plaintiff's rights.  (*See* Compl. ¶¶ 96-97, 101-102.) Franklin argues that under 42 U.S.C. § 1983 he cannot be held liable on the theory of *respondeat superior* and there are no additional grounds for liability.  (Mot. to Dismiss, 2.) Plaintiff responds that Franklin can be held liable under supervisory liability because he "participated in the violation of Plaintiff's constitutional rights by authorizing or condoning the deprivation through his policies and/or practices."  (Response, 5-6.)

9

Section 1983 is not an independent source of rights, but only a means to permit vindication of constitutional and statutory rights by allowing suit against state officials infringing on those rights. *See Williams v. Goldsmith*, 4 F. Supp. 2d 1112, 1122 (M.D. Ala. 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). "It is axiomatic, in section 1983 actions, that liability must be based on something more than a theory of respondeat superior." *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1979). Supervisory liability exists "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between action of the supervising official and the alleged constitutional deprivation." *Willis v. Siegelman*, 307 F. Supp. 2d 1236, 1240 (M.D. Ala. 2004) (citing *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

To the extent that Plaintiff's counsel is alleging liability based on personal participation, there is no claim against Franklin. Plaintiff has failed to indicate any personal participation on the part of Franklin and does not claim he even went to the Elmore County Jail while Cotney was incarcerated. *See Adams v. Franklin*, 111 F. Supp. 2d 1255, 1265 (M.D. Ala. 2000) ("Plaintiff has not alleged or argued that . . . Franklin . . . personally participated in the alleged constitutional violations or [was] even present at the jail on the day in question."); *see also Walters v. City of Andalusia*, 89 F. Supp. 2d 1266, 1284 (M.D. Ala. 2000) (holding that no personal participation supervisory liability existed "[b]ecause Plaintiff has not established Wheeler's presence at the scene").

Plaintiff is no more successful to the extent he is alleging liability based on a casual connection.  Causal connection liability in this context can be established in several ways, including "when a 'custom or policy' results in 'deliberate indifference to constitutional rights.'" *Willis*, 307 F. Supp. 2d at 1240 (citations omitted).  However, the standard by which a supervisor can be held liable in such a situation is "extremely rigorous." *Braddy v. Fla. Dept. of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).  Additionally, the heightened pleading requirement means that Plaintiff must do something more than allege in a conclusory fashion that there was a policy that violated his rights. *See Fullman v. Graddick*, 739  F.2d 553, 556-57 (11th Cir. 1984).

In this case, Cotney failed to identify any specific written or unwritten policy that Franklin promulgated but only alleged in that "Franklin . . . did in fact develop and promulgate policies and procedures."  (Am. Compl. ¶ 96.)  Moreover, even if Franklin did promulgate some relevant policy, Cotney has not suggested how the existence of that policy was the cause in fact of any violation of his constitutional rights; he states only that "Bowers followed . . . the policies . . . promulgated by Franklin."  Accordingly, Cotney has failed to state a claim against Franklin upon which relief can be granted. *See Adams*, 111 F. Supp. 2d at 1265.  Therefore, Defendant's Motion to Dismiss the claims against Franklin is due to be GRANTED.[3]

---

[3]Because the Plaintiff has failed to state a claim against Franklin, the Court need not address whether Franklin would be entitled to qualified immunity.  However, it is likely that Franklin would be entitled to qualified immunity for the supervisory liability claims because

**E.  Claims Against Bowers**

Bowers argues that he is protected from suit in his individual capacity by qualified immunity.  (*See* Mot. to Dismiss, 3-6.)  Qualified immunity protects governmental officials from lawsuits to the extent that they are performing discretionary functions and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1424 (11th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 880, 818 (1982)).  A right is clearly established when there is sufficient law on that point to provide "fair warning" to defendants.  *Hope v. Pfelzer*, 536 U.S. 730, 740 (2002) (indicating that qualified immunity will not be extended if "prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights").

Because there does not appear to be any disagreement that Bowers was performing discretionary functions within the context of his job as a government official at all times relevant to this case, the issue before the Court is whether Bowers' conduct violated a clearly established right of which a reasonable jail administrator would have known.  *See Lancaster*, 116 F.3d at 1424.  When making this determination in the context of a motion to dismiss, the Court must identify the rights that the plaintiff claims have been violated and then apply both

---

of a lack of clearly established law.  *See Harper v. Southeast Ala. Med. Ctr.*, 998 F. Supp. 1289, 1300 (M.D. Ala. 1998) (quoting Justice Breyer as noting that the 'basic effort to distinguish between vicarious liability and liability derived from 'policy or custom' has produced a body of law that is neither readily understandable nor easy to apply').

the Rule 12(b)(6) standard and the qualified immunity standard, as either will provide a valid ground for dismissal of the claim. *See Adams v. Franklin*, 111 F. Supp. 2d 1255, 1564-65 (M.D. Ala. 2000) (citation omitted) ("When a government official moves to dismiss a claim on the basis of qualified immunity, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined.").[4]   The Court will examine each potential constitutional violation in turn.

### 1. Eighth Amendment Claims

Plaintiff appears to allege that Bowers violated his Eighth Amendment right to be free from cruel and unusual punishment by using excessive force against him (Am. Compl. ¶¶ 69, 75), by employing excessive restraint (Am. Compl. ¶ 76), by depriving him of things such as dry clothing and exercise (Am. Compl. ¶¶ 70-74, 76-80, 82-84), and by the prison conditions generally (Am. Comp. ¶¶ 70-74, 82-84).   In response, Bowers correctly argues that the Eighth Amendment does not apply to pretrial detainees.  (*See* Reply, 3.)   Pretrial detainees are protected from punishment, including cruel and unusual punishment, by the Fourteenth Amendment Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979) ("The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees.  Due process requires that

---

[4]This inquiry is parallel to the similar analysis appropriate to the summary judgement phase, as stated in *Saucier v. Katz*, 533 U.S. 194, 200 (2001) ("[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question [is] whether the right was clearly established . . . .").

a pretrial detainee not be punished.  A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment."); *see also Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.").  Therefore, Defendants' Motion to Dismiss claims under the Eighth Amendment is due to be GRANTED.

### 2. Fifth Amendment Claims

Cotney also alleges that Bowers violated his right to due process under the Fifth Amendment.  (*See* Am. Compl. ¶ 74.)  However, the Due Process Clause of the Fifth Amendment applies only to the federal government, while due process challenges to the actions of state or local governments must be maintained under the Fourteenth Amendment. *See, e.g., Hunter v. City of Pittsburgh*, 207 U.S. 161, 176 (1907) ("The 5th Amendment to the Constitution of the United States is not restrictive of state, but only of national, action."); *see also Knoetze v. United States Dep't of State*, 634 F.2d 207, 211 (5th Cir. 1981) ("Yet fifth amendment protection attaches only when the federal government seeks to deny a liberty or property interest.").[5]  Therefore, the Defendants' Motion to Dismiss claims under the Fifth

---

[5]Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

Amendment is due to be GRANTED.

### 3.  Fourth Amendment Claims

Cotney alleges that he had a right to "due process" under the Fourth Amendment (Am. Compl. ¶74), that he had rights to be free from physical abuse and restraints and shackles (Compl. ¶¶ 75-76), that his rights were clearly established ( Comp. ¶82-83), and that Bowers abridged his Fourth Amendment rights (Comp. ¶¶ 84).  However, because the law is not clearly established as to the rights of pre-trial detainees against search and seizure under the Fourth Amendment, Bowers is entitled to qualified immunity as to Fourth Amendment claims. *See Bozeman v. Orum*, 199 F. Supp. 2d 1216, 1229 (M.D. Ala. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)) (noting that "the scope of fourth-amendment protection for pretrial detainees is not well-defined").

However, "qualified immunity is only a defense to personal liability for monetary awards . . . [and] may not be effectively asserted as a defense to a claim for declaratory or injunctive relief." *Ratliff v. DeKalb County, Ga.,* 62 F.3d 338, 340 (11th Cir. 1995) (citations omitted) (noting also that qualified immunity will bar the award of attorney fees).  Therefore, Defendants' Motion to Dismiss claims for monetary relief and attorneys fees under the Fourth Amendment is due to be GRANTED.[6]

---

[6]Bowers argues that there is no claim upon which relief can be granted under the Fourth Amendment, which would, if true, preclude even declaratory relief against him.  The Court will not reach that argument at this time, however, because it was raised for the first time in the Defendants' Reply brief and the Plaintiff was not given an opportunity to respond.

### 4. First Amendment Claims

Cotney alleges that Bowers deprived him of his First Amendment rights by forbidding him to have visits from his father after his father engaged in expressive activity. (*See* Am. Compl. ¶¶ 85-90.) The Eleventh Circuit has stated that "[a] convicted prisoner has no absolute constitutional right to visitation, such privilege being subject to the discretion of prison authorities, provided the visitation policies of the prison meet legitimate penological objectives." *Evans v. Johnson*, 808 F.2d 1427, 1428 (11th Cir. 1987). Legitimate penological objectives include "rehabilitation and the maintenance of security and order." *Lynott v. Henderson*, 610 F.2d 340, 342-43 (5th Cir. 1980) (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

According to relevant Supreme Court precedent, it seems appropriate to apply the same standard to pretrial detainees. *See Bell*, 441 U.S. at 546 ("maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."); *see also Jones v. NC Prisoners' Labor Union, Inc.*, 433 U.S. 119, 119 (1977). However, the Eleventh Circuit has not spoken clearly on this issue, and while different circuits have reached differing conclusions, they all demonstrate a lack of clarity in the law. *See Morrow v. Harwell,* 768 F.2d 619, 625 (5th Cir. 1985) ("Finding protected

---

Defendant is free to raise this argument again in a later dispositive motion if the Plaintiff continues to assert a violation of the Fourth Amendment.

speech in ordinary visits with detainees is problematic at best."); *Blackburn v. Snow*, 771 F.2d 556, 567 (1st Cir. 1985) ("the availability of some form of visit . . . implicates 'communicative, as well as associational values protected by the first amendment.'").

Because of the lack of clearly established law on the issue of freedom of association rights of pretrial detainees, it cannot be said that a reasonable jail administrator in Bowers' position would have had fair warning that not permitting Cotney to visit with his father would have violated Cotney's First Amendment rights. *See Long v. Norris*, 929 F.2d 1111, 1118 (6th Cir. 1991) ("we have not decided the degree to which prison inmates retain their freedom of association. . . . Given the sparse authority on this issue, we hold that any such right, if it exists, is not clearly established.")  Therefore, Defendants' Motion to Dismiss claims for monetary relief and attorneys fees under the First Amendment is due to be GRANTED.

### 5. Fourteenth Amendment Claims

Cotney alleges that Bowers violated his right to due process under the Fourteenth Amendment and alleges facts regarding excessive force, excessive restraint, denial of hearing, detention in substandard conditions including the lack of plumbing and  bedding, the denial of necessities including dry clothes, basic hygiene supplies, breakfast, and exercise, and the denial of telephone use and visitation.  (*See* Am. Compl.  ¶¶ 69-92.)

#### a. Excessive Force

Cotney states that Bowers used unreasonable force when he kicked him in the leg and

the ribs.  (*See* Am. Compl. ¶ 69.)  He also alleges that he was "fully compliant with jail officials, including Bowers."  (Am. Compl. ¶ 26.)

The Fourteenth Amendment "clearly provides due-process protections to pretrial detainees against the use of excessive force that amounts to punishment." *Bozeman*, 119 F.Supp. at 1229 (citing *Graham v. Conner*, 490 U.S. 386, 395 n.10 (1989)).  However, "[n]ot every application of intentional force rises to the level of a deprivation of due process."  *Id.* Instead, the Court should determine whether "the constitutional line has been crossed" based on the need for the use of force, the amount of force used in relation to the need, the extent of the injury, and the motive for using force, i.e. good faith attempt to restore order or malicious attempt to cause harm.  *Id.*

In this case, Cotney alleges that there was no need for the use of force: he was compliant and cooperative at all times.  Therefore, the facts in the Amended Complaint state a claim that the force used was excessive in relation to a non-existent need for force.  *See Skrtich v. Thornton*, 280 F.3d 1295, 1304-05 (11th Cir. 2002) ("The law of excessive force in this country is that a prisoner cannot be subjected to gratuitous or disproportionate force that has no object but to inflict pain. . . . The use of force must stop when the need for it to maintain or restore discipline no longer exists." ).  However, the extent of injury is small, in that Cotney does not alleged that he was injured by either of the kicks.  In *Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1460-61 (11th Cir. 1997), the court found that qualified immunity applied on the excessive force claim where "the actual force used and the injury inflicted were both minor

18

in nature."  In that case, officers "slammed" a defendant against a wall, kicked legs apart and required him to raise his hands above his head, such that he experienced knee and shoulder pain.  *Id.*

This case is distinguishable from *Jones*, however, on the issue of motive.  While no facts specifically indicate Bowers' motive for using force, the officers were not engaged in traditional acts of subduing a defendant, such as requiring him to spread his legs and raise his arms.  Instead, there was no breach of order and yet officers were kicking Cotney, an action that might normally be considered malicious.  Therefore, the Court cannot say that Cotney cannot establish, consistent with the facts alleged in the complaint, a violation of his clearly established Fourteenth Amendment rights.  Therefore, Defendants' Motion to Dismiss the Fourteenth Amendment excessive force claim is due to be DENIED.

### b. Excessive Restraint

Cotney states that Bowers restrained him as follows:  by placing him in "X cell," with his legs shackled together and to the grate over the "Chinese toilet" and his hand cuffed behind him from approximately 9:00 p.m. on April 18, 2003, until noon on April 19, 2003; by maintaining him in "X cell" with his legs and left hand shacked together and to the grate from approximate noon on April 19, 2003, until April 21, 2003; and by maintaining him in "X cell" with his feet shackled together and to the grate from April 21, 2003, until April 23, 2003.  (*See* Am. Compl. ¶¶ 20-42.)

Plaintiff relies on *Hope v. Pelzer*, 536 U.S. 730 (2002), to demonstrate both that the

facts alleged in the Amended Complaint state a claim for relief and that the law regarding excessive restraint is clearly established.  The plaintiff in *Hope* was handcuffed to a hitching post twice: first, for two hours (with opportunities for water and bathroom breaks every 15 minutes) and, subsequently, for seven hours in the sun (with only two opportunities for water and no bathroom breaks.  *Hope*, 536 U.S. at 737.   The Court held that "the attachment of Hope to the hitching post under the circumstances alleged in this case violated the Eighth Amendment." *Id*.  The Court finds that the factual similarities between *Hope* and this case[7] are sufficient to demonstrate not only that Cotney has alleged facts that state a claim upon which relief can be granted, but also that Bowers had sufficient notice that his conduct was contrary to clearly established law.  *See Hope,* 536 U.S. 737 n.6 (quoting *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974) in connection with the proposition that courts can easily conclude that punishments such as "handcuffing inmates to the fence and to cells for long period of time" are contrary to the Eighth Amendment).  Therefore, Bowers is not afforded the protection of sovereign immunity as to the claim of excessive restraint, and the Defendants' Motion to Dismiss this claim is due to be DENIED.

### c. Remaining Fourteenth Amendment Claims

Cotney also alleges that he was denied a hearing, detained in substandard conditions,

---

[7]The Court can identify no difference in the severity of the treatment between painfully handcuffing one's hands at the level of his head to a hitching post and shackling ones hands and legs to the grate of an open toilet.  Moreover, Cotney was detained in such way for significantly longer periods of time than Hope.

and denied dry clothes, hygiene supplies, breakfast, exercise, telephone use and visitation. (*See* Am. Compl. ¶¶ 27-49.)  Plaintiff argues generally that officials cannot impose any conditions on pretrial detainees with an intent to punish, citing *Bell v. Wolfish*, 441 U.S. 520 (1979), and that "the treatments and conditions [to which Cotney was subject] were not intended to fulfill any articulable penological purpose." (Resp. to Mot. to Dismiss, 7).

The Court finds that the Plaintiff has pled facts sufficient to allege a claim upon which relief can be granted for conduct that would be contrary to clearly established law.  Cotney has alleged facts that arguably demonstrate that Bowers punished Cotney and facts that indicate no identifiable penological purpose exists, i.e. that Cotney accidentally activated the sprinkler system and was fully compliant. *See Wilson v. Blankenship*, 163 F.3d 1284, 1292 (11th Cir. 1998) ("If a restriction is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court may infer that the purpose of the government action is punishment. . . . Additionally, our court evaluates particular pretrial detainee complaints against the *totality* of confinement conditions to determine if there is constitutional deficiency."); *see also Fambro v. Fulton County, Ga.*, 713 F.Supp. 1426, 1431 (N.D.Ga. 1989) (holding that "unquestionably unconstitutional" conditions existed where "inmates are being required to live and sleep in and around seeping sewerage and in warm dark places which are not regularly and adequately cleaned . . . [and there was a] lack of the ability to provide for adequate personal hygiene."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985) (stating that states' provision of pretrial detainees with basic necessities . . . must meet

the standards applied under the eighth amendment prohibition on cruel and unusual punishment, i.e. they must furnish the detainees with a reasonably adequate diet and living space"); *Nicholson v. Choctaw County, Ala.*, 498 F.Supp. 295, 310 (D.C.Ala., 1980) ("Pretrial detainees are entitled to reasonable use of the telephone at reasonable times."); *Jones v. Diamond,* 594 F.2d 997, 1017 (5th Cir., 1979) (requiring the "minimum procedural due process, that is, inform him of the violation with which he stands charged and give him an opportunity informally to demonstrate that he is not guilty" before visitation rights could be suspended). Therefore, the Defendants' Motion to Dismiss as to his Fourth Amendment claims is due to be DENIED.

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (Doc. #10) is GRANTED IN PART and DENIED IN PART as follows:

(1) regarding punitive damages, it is GRANTED as to claims against the Defendants in their official capacities and DENIED as to the Defendants in their individual capacities;

(2) it is GRANTED as to all claims for injunctive relief;

(3) it is GRANTED as to all claims for monetary relief against Franklin and Bowers in their official capacities;

(4) it is GRANTED as to all claims against Franklin;

(5) it is GRANTED as to all Eighth Amendment claims;

(6) it is GRANTED as to all Fifth Amendment claims;

(7) it is GRANTED on the grounds of qualified immunity as to all Fourth Amendment claims for monetary relief and attorneys' fees;

(8) it is GRANTED on the grounds of qualified immunity as to all First Amendment claims for monetary relief and attorneys' fees; and

(9) it is DENIED as to all remaining claims.

Therefore, it is further ORDERED that Defendant Franklin is DISMISSED from this action, with each party to bear his own costs.

DONE this 24th day of June, 2005.

_____ /s/ Mark E. Fuller _____
CHIEF UNITED STATES DISTRICT JUDGE