IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| DAVID FRANKLIN COTNEY, JR., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | CASE NO. 2:03-cv-1181-WKW |
| v. | ) | (WO) |
|  | ) |  |
| GARRY BOWERS, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Cotney, Jr. ("Cotney") brings this civil rights action against Garry Bowers ("Bowers"), individually and as administrator of the Elmore County Jail. Cotney alleges constitutional claims, as enforced through 42 U.S.C. § 1983, stemming from his incarceration in the Elmore County Jail as a federal pretrial detainee.[1]

This cause is before the Court on Defendant's Motion for Summary Judgment (Doc. # 42) filed on July 5, 2006. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the Court finds that the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

**I. FACTS AND PROCEDURAL HISTORY**

The Court has considered all deposition transcripts and documents submitted in support of and in opposition to the motion for summary judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts.

On April 18, 2003, Cotney was transferred from the Montgomery Municipal Jail to the

---

[1] Cotney is no longer in the custody of the Elmore County Jail.

1

Elmore County Jail.[2] Cotney was placed in cell block D, a cell block which is not part of the general population, and was the sole individual housed in Cell D-5. According to Cotney, around 9:00 p.m. that night, in a futile attempt to turn off the light switch in his cell so that he could go to sleep, he inadvertently broke the sprinkler head which caused flooding of the entire cell block. Elmore County Jail Correctional Officers quickly relocated Cotney to Cell X.[3] In Cell X, Cotney's hands were handcuffed behind his back and his ankles were shackled to the grate in the floor. A few hours later, Bowers entered Cell X and verbally reprimanded Cotney for breaking the sprinkler head. According to Cotney, Bowers kicked him in the ribs and leg while he was restrained in handcuffs and shackles.[4] Bowers then left Cell X and did not return until three days later.

Cotney was held in Cell X for fifteen days. During those fifteen days, Cotney complains that the conditions in Cell X were unsanitary[5] and punitive,[6] and that he did not receive any exercise privileges. Cotney asserts that he remained handcuffed and shackled for over twelve hours on April 18, 2003, and was forced to sleep on the bare concrete floor. Although Cotney refused breakfast the next morning, he received lunch at noon. The correctional officers removed the handcuff from Cotney's right hand so that he could eat his lunch, but they handcuffed his left hand to his leg

---

[2] Cotney was transferred because the correctional officers at the Montgomery Municipal Jail ("Jail") believed that he was involved in a conspiracy to escape, possessed weapons, and intentionally defaced Jail property. Specifically, these correctional officers found two mental shanks in the mat in Cotney's cell and discovered a large hole in the wall located near the cell window.

[3] Cell X is a holding cell, located in the front area of the jail, which is often used when an inmate presents to the jail drunk or otherwise disorderly. Cell X is padded and contains no furniture, commode, or shower. The only amenity in Cell X is a "Chinese toilet," which consists of a hole in the middle of the cell floor that is covered by a metal grate. The toilet is flushed from the outside by correctional officers.

[4] This allegation is hotly disputed. Bowers asserts that he neither kicked nor touched Cotney.

[5] According to Cotney, Cell X appeared to be unclean upon his arrival and urine was present around the grate.

[6] Cotney complains that the cell was uncomfortably cold as it is one of the few parts of the Elmore County Jail that is air-conditioned. Cotney also complains that he did not receive any bedding or personal supplies while he was housed in Cell X.

2

shackles and the grate. Cotney remained in that position until Monday, April 21, 2003.

On April 21, 2003, Bowers briefly released Cotney from Cell X and permitted him to shower, use the restroom and change into fresh clothing. Thereafter, Cotney was returned to Cell X and shackled to the grate though his hands remained free.[7] Cotney did not make any complaints to Bowers. The next day, April 22, 2003, Cotney was released from the cell to visit with his attorney. After he returned to the cell, Cotney received a blanket but remained shackled to the grate. On the following day, Wednesday, April 23, 2003, Cotney was removed from the shackles. After being removed from the shackles, Cotney was permitted thereafter to use the toilet in an adjacent cell whenever he requested.

Eight days later, Cotney received a mat to sleep on. Two days thereafter, Cotney was removed from Cell X and placed in Cell Y.[8] Cotney remained in Cell Y for two days and then was returned to cell block D.

On December 1, 2003, Cotney filed this lawsuit against Bill Franklin ("Franklin"), individually and as sheriff of Elmore County; Bowers, individually and as jail administrator of the Elmore County Jail; and Elmore County, Alabama ("Elmore County"). (Doc. # 1, Compl.) Cotney alleges that the defendants violated his constitutional rights secured by the First, Fourth, Fifth, Eighth and Fourteenth Amendments, and seeks damages under 42 U.S.C. § 1983.[9]

On June 24, 2005, the Court ruled on the motions to dismiss filed by Franklin, Bowers and Elmore County. (Docs. # 26 & 27.) In separate opinions, the Court granted in part and denied in

---

[7] According to Bowers, on April 21, 2003, he did not participate in Cotney's brief release from Cell X, but he observed Cotney standing unshackled near the cell door.

[8] Although Cell Y is adjacent to Cell X, Cell Y contains a seat, toilet, sink and cot.

[9] Cotney complains that he developed a serious staph infection as a result of sleeping on the unsanitary floor in close proximity to the "Chinese toilet."

part the motions to dismiss,[10] leaving only the following claims: (1) Cotney's Fourteenth Amendment claims against Bowers alleging excessive force, excessive restraint, and due process violations, seeking monetary damages and declaratory relief; (2) Cotney's claims under the First and Fourth Amendments for declaratory relief against Bowers; and (3) Cotney's claims against Elmore County under the First, Fourth and Fourteenth Amendments for failure to maintain the Elmore County Jail. (*Id.*)

## II. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## III. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which

---

[10] Due to the Court's rulings, Franklin was dismissed as a party to this action. (Doc. # 27.)

4

it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). On the other hand, the court must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

*A.     Abandoned Claims*

In his response to the motion for summary judgment, Cotney explicitly abandoned some of his claims. Specifically, Cotney abandoned his claims against Elmore County[11] and his claim for declaratory relief. (Doc. # 46 at 1 n.1 & 16.) Accordingly, the motion for summary judgment is due to be granted on these claims.[12]

Moreover, in Bowers' reply in support of the motion for summary judgment, he argues that Cotney has abandoned some of his other claims because his response to the motion for summary

---

[11] In the pretrial conference, Plaintiff stipulated to the dismissal of Elmore County, thus the Court has dismissed Elmore County from this case.

[12] Accordingly, the Court will refer to the sole remaining defendant, Bowers, throughout the remainder of the Opinion.

judgment failed to address these claims. The Court agrees with Bowers.

It is well-established that in opposing summary judgment, Cotney cannot merely rest on his pleadings. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). In other words,

> [t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; *grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned*.

*Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) (emphasis added).

In moving for summary judgment, Bowers addresses all of Cotney's claims which remained after the Court ruled on the motions to dismiss. However, in response to Bower's motion, Cotney addresses only his claims of procedural due process, excessive force, and excessive restraint[13] brought under the Fourth and Fourteenth Amendments. Cotney fails to address his claim under the First Amendment. Based on the foregoing, the Court finds that Cotney has abandoned this claim, and has not met his burden on summary judgment of "go[ing] beyond the pleadings" and demonstrating "specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). *See also Jordan v. Warehouse Servs., Inc.,* 81 F. Supp. 2d 1257, 1266-67 (M.D. Ala. 2000). The Court concludes that Cotney has preserved only his claims of procedural due process, excessive force, and excessive restraint brought under the Fourth and Fourteenth Amendments. Consequently, Bower's motion for summary judgment is due to be granted

---

[13] The Court notes that Plaintiff's excessive restraint claim focuses on the inhumane conditions of his confinement.

6

on Cotney's First Amendment claim.

The Court now turns to address Cotney's preserved claims.

B.   Section 1983[14]

1.   *Fourth Amendment Claim*

Bowers argues that Cotney's Fourth Amendment excessive force claim is due to be dismissed as a matter of law because the claim, arising from his mistreatment as a pretrial detainee, is governed by the Fourteenth, not Fourth, Amendment.  (Doc. # 43 at 25.)  In his response to the motion for summary judgment, Cotney "agree[s] that claims of excessive force asserted by pretrial detainees are governed by a substantive due process standard," but argues that nothing in the relevant Fourteenth Amendment case law "excludes application of the Fourth Amendment."  (Doc. # 46 at 10, 11.)

Having reviewed all relevant case law, the Court finds that the application of the Fourth Amendment to Cotney's pretrial detainee excessive force claim is not appropriate.  *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause . . . ."); *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (applying Fourteenth Amendment analysis to pretrial detainee's excessive force claim).  Therefore, the Court concludes that Bowers' motion for summary judgment is due to be granted on Cotney's Fourth Amendment claim.[15]

---

[14] Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C. § 1983.

[15] Furthermore, Cotney has not pointed the Court to any United States Supreme Court, Eleventh Circuit, or Alabama Supreme Court case holding that the Fourth Amendment creates a cause of action for a pretrial detainee complaining of excessive force.  Thus, even if Cotney, a pretrial detainee, could proceed with an excessive force claim under the Fourth Amendment, Bowers would be entitled to qualified immunity because the law was not clearly established at the time the events in this case occurred.  (*See infra* for a further discussion of qualified immunity.)

## 2. Fourteenth Amendment Claims

Bowers argues that the motion for summary judgment is due to be granted because he is entitled to qualified immunity on Cotney's Fourteenth Amendment claims. Cotney responds that Bowers is not entitled to qualified immunity because the constitutional rights violated by Bowers were clearly established.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted). *See also Wood v. Kesler*, 323 F.3d 872 (11th Cir. 2003).

To receive qualified immunity, the government official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful actions occurred. *See Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) Here, it is undisputed that, at all relevant times, Bowers was acting within the course and scope of his discretionary authority. "Once the defendant[ ] establish[es] that [he was] acting within [his] discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." *Id.*

The United States Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S.

730 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard*, 311 F.3d at 1346 (quoting *Saucier,* 533 U.S. at 201). Thus, the Court must analyze first whether Bowers' conduct violated Cotney's constitutional rights protected under the Fourteenth Amendment.[16]

        a.    *Procedural Due Process Claim*

Cotney argues that Bowers violated his right to procedural due process, as protected under the Fourteenth Amendment, by not affording him a "pre-punishment hearing, a hearing during his punishment, or, in the alternative, a hearing after his punishment." (Doc. # 46 at 8.) Cotney contends that, as a pretrial detainee, his conditions of confinement constituted punishment and thus, under the procedural due process requirements of the Fourteenth Amendment, he was wrongfully denied a hearing in relation to the punishment.

An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. *Cryder v. Oxendine,* 24 F.3d 175, 177 (11th Cir. 1994). "The Supreme Court has made it clear that the Due Process Clause does not directly protect an inmate from changes in the conditions of his confinement . . . [n]or does the Due Process Clause itself create an interest in being confined to a general population

---

[16] Although Cotney's claims as a pretrial detainee are governed by the Fourteenth Amendment's Due Process Clause, the applicable standard is the same for claims raised by convicted prisoners which is governed by the Eighth Amendment's Cruel and Unusual Punishment Clause. *Cottrell,* 85 F.3d at 1490. The Court therefore frequently relies on case law addressing Eighth Amendment claims because "decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees." *Id*.

9

cell, rather than the more austere and restrictive administrative segregation quarters." *Chandler v. Baird,* 926 F.2d 1057, 1060 (11th Cir. 1991) (internal citation omitted).

Here, Cotney has failed to argue or present evidence relating to the existence of a liberty interest which is protected by due process safeguards. Cotney has failed to create a genuine issue of material fact as to whether he had a liberty interest in staying in the limited population in cell block D, as opposed to being placed in isolation in Cell X. Without evidence of a liberty interest, it is unnecessary to address the disciplinary hearing proceedings. *See Cryder,* 24 F.3d at 177. Accordingly, the Court finds that Cotney has not established that Bowers' conduct violated his right to procedural due process as protected under the Fourteenth Amendment. Bowers therefore is entitled to summary judgment on this claim.

b. *Excessive Force Claim*

Cotney argues that Bowers violated his Fourteenth Amendment rights by using excessive force in kicking him twice, once in the ribs and once in the legs, while he was restrained in handcuffs and shackles. Under the applicable excessive force standard, "whether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Bozeman*, 422 F.3d at 1271 (quoting *Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987)). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered, including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson v. McMillan*, 503 U.S. 1, 7-8 (1992); *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). "From consideration of such factors, inferences may be drawn as to whether the use of force could plausibly have been

thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Skrtich*, 280 F.3d at 1300-01 (internal quotations omitted).

Notably, "[i]n this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the [Fourteenth] Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley* [*v. Albers*, 475 U.S. 312 (1986)].[17]" *Id*. "There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation." *Id*.

Viewing the evidence presented by the parties in the light most favorable to Cotney, the Court finds that Cotney's deposition testimony allows a reasonable inference to be drawn that Bowers kicked him in a malicious way after he was restrained, for the very purpose of causing harm. Cotney's testimony, taken as true, establishes that Bowers entered Cell X *a few hours after* Cotney caused the flooding and that Cotney's hands were handcuffed behind his back and his legs were shackled to the floor when Bowers kicked him. According to Cotney, Bowers reprimanded him for breaking the sprinkler head and flooding the cell block. Based upon these facts, when Bowers entered Cell X, *an hour* to *two hours later*,[18] Cotney posed no continuing threat to the officers nor disturbance to other individuals so Bowers' use of force was not necessary to maintain or restore discipline.[19] Assuming these facts are true, one could draw a reasonable inference that Bowers' use

---

[17] In *Whitley* the Supreme Court reviewed the force used to quell a prison riot, whereas in *Hudson* the Supreme Court extended *Whitley*'s holding outside the prison-riot context. *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).

[18] (*See* Doc. # 44, Ex. B, Cotney's Dep. at 19) ("Maybe an hour, hour and a half, two hours had passed, and [Bowers] come in [sic] where they had call [sic] him in.")

[19] Although "force does not violate the [Fourteenth] Amendment merely because it was unreasonable or unnecessary," *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999), "once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the [Fourteenth] Amendment, and any abuse directed

of force was for the very purpose of causing harm or as punishment for Cotney's past misconduct. *See Bozeman*, 422 F.3d at 1272. As a result, Bowers is not entitled to qualified immunity. *See id*. (noting that "where this kind of excessive force violation is established, there is no room for qualified immunity") (internal quotation marks omitted); *Skrtich*, 280 F.3d at 1303 ("By 1998, [Eleventh Circuit] precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued . . . ."). Qualified immunity simply does not protect officials, such as Bowers, who allegedly administer beatings for the purpose of punishing a prisoner for his past misconduct. *Id*. at 1302-04.

Furthermore, the Court rejects Bowers' argument that Cotney's excessive force claim is barred by the Prison Litigation Reform Act ("PLRA") because he suffered only a *de minimis* injury. The instant action is governed by the PLRA which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). *See Hall v. Richardson*, 144 Fed. Appx. 835 (11th Cir. 2005) (applying PLRA to Section 1983 claims of pretrial detainee). The Eleventh Circuit has elucidated that "a prisoner's claims [under the PLRA] for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1313 (11th Cir. 2002).[20]

In the case *sub judice*, Cotney testified that he suffered bruises on his ribs from Bowers' use

---

at the prisoner after he terminates his resistance to authority is an [Fourteenth] Amendment violation," *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991).

[20] Bowers also argues that Cotney's excessive force claim is due to be dismissed "because the force allegedly used . . . in this matter [was] clearly *de minimis*." (Doc. # 43 at 17-18.) Notably, there is a significant distinction between Bowers' *de minimis* use of force argument and his *de minimis* injury argument. The *de minimis* injury assessment is required by the PLRA whereas the *de minimis* force assessment is governed by the Constitution. *See Hudson*, 503 U.S. at 4-7 (noting that the absence of serious injury alone is insufficient to dismiss a plaintiff's excessive force claim; only *de minimis* uses of force are beyond constitutional recognition). Here, the Court finds that there is a genuine issue of fact as to whether a *de minimis* use of force was used by Bowers in this case.

of force and that the bruises healed after several weeks without treatment.[21] The Court cannot find as a matter of law that Cotney's injury is *de minimis*. Although bruising which lasts for several weeks could be viewed as a *de minimis* injury, it could also be viewed as an injury that is greater than *de minimis*. The Court, however, need not make that determination as it is due to be made by a trier of fact. Because the evidence before the Court supports a reasonable inference that Cotney's injury is more than *de minimis*, the Court finds that Bowers is not entitled to summary judgment on Cotney's excessive force claim.

    c.     *Excessive Restraint Claim*

Cotney also brings a Fourteenth Amendment violation arguing that Bowers' use of shackles while he was in Cell X constituted excessive restraint. Cotney's excessive restraint claim focuses on his shackling to the "Chinese toilet" and Bowers deliberate indifference to the inhumane conditions of confinement Cotney suffered. Cotney specifically argues that Bowers was aware of his shackling to the "Chinese toilet" and did not release him from the restraints until three days later.

Because the crux of Cotney's excessive restraint claim is his "inhumane conditions of confinement" argument, the Court treats his excessive restraint claim as a deliberate indifference to conditions of confinement claim. The Supreme Court has developed a two-part analysis to govern challenges to conditions of confinement.[22] First, under the "objective component," a prisoner must prove that the condition of which he complains is sufficiently serious to violate the Eighth Amendment. *Hudson*, 503 U.S. at 8. The challenged condition must be "extreme." *Id*. at 9. "While

---

[21] The Court notes that Cotney does not address this *de minimis* injury or force argument in his brief in opposition to the motion for summary judgment.

[22] The Court will analyze this claim under the deliberate indifference standard explained in Eighth Amendment case law. "[T]he standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." *Bozeman*, 422 F.3d at 1272 n.13 (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1024 n.5 (11th Cir. 2001) (en banc)).

13

an inmate need not await a tragic event before seeking relief, he must at the very least show that a condition of his confinement poses an unreasonable risk of serious damages to his future health or safety. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citations and quotations omitted).

> Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to the challenged condition of confinement. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Id*. Therefore, the Eighth Amendment guarantees that prisoners will not be deprived of the minimal civilized measure of life's necessities. *Id*. (citation and quotations omitted). Second, the prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. *Hudson*, 503 U.S. at 8. The Supreme Court has stated:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Consistent with the Supreme Court's standards, the Eleventh Circuit has stated that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003).

Cotney testified that Bowers allowed him to remain shackled to the "Chinese toilet" in cell X without the ability to exercise, use the restroom, shower, sit comfortably, sleep comfortably, or change his wet clothing for three days. Cotney further testified that he was forced to lay in an urine-covered area due to his shackling to the "Chinese toilet" and that Bowers briefly released him from

the shackles three days later. Bowers testimony indicates that he observed Cotney handcuffed and shackled to the "Chinese toilet" on that Friday evening, but that he did not know the duration of these circumstances nor the specific sanitary conditions of the cell. Because there are disputed issues of fact concerning whether Bowers allowed Cotney to remain shackled to the "Chinese toilet" for three days and otherwise subjected him to unconstitutional conditions of confinement,[23] the Court concludes that Bowers' motion for summary judgment is due to be denied with respect to Cotney's Fourteenth Amendment deliberate indifference to conditions of confinement claim.[24]

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. Defendants' Motion for Summary Judgment (Doc. # 42) is GRANTED in part and DENIED in part.

2. Plaintiff's claims for declaratory relief are hereby DISMISSED.

3. Plaintiff's First Amendment claim is hereby DISMISSED.

4. Plaintiff's Fourteenth Amendment claim for excessive restraint is treated as a claim for deliberate indifference to conditions of confinement, and is allowed.

5. Plaintiff's Fourth Amendment claim is hereby DISMISSED.

---

[23] Assuming Cotney's testimony is true, the Court finds that the combined impact of the alleged conditions made his confinement as a pretrial detainee in the cell punishment *per se*. Although "the Constitution does not require prisons to be comfortable, it also does not permit them to be inhumane . . . ." *Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir. 1994). As the Second Circuit stated in *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972),

> What is most offensive to this Court was the use of the "Chinese toilet." Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted.

Without question, subjecting someone to three days of shackling to a "Chinese toilet," without consideration of their sleeping or living conditions, is indeed inhumane.

[24] Bowers is not entitled to summary judgment on the basis of qualified immunity because the "right of a prisoner not to be confined in a cell . . . in conditions lacking basic sanitation was well established in 1986." *Chandler*, 926 F.2d at 1065.

This case shall proceed solely on Plaintiff's Fourteenth Amendment claims of excessive force and deliberate indifference to conditions of confinement against Defendant Garry Bowers in his individual capacity.

DONE this 26th day of September, 2006.

                                             /s/ W. Keith Watkins
                                             UNITED STATES DISTRICT JUDGE